## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: RESTRAINT OF ALL ASSETS )<br>HELD IN ACCOUNT NO.  4246 3492 )<br>AT CITIBANK NEW YORK, )<br>IN THE NAME OF JOSÉ RENATO )<br>GRANADO FERREIRA AND/OR BELMIRO )<br>MARTINS FERREIRA; )<br>                                      )<br>ALL ASSETS HELD IN ACCOUNT )<br>NUMBER 33X-05576 AT CITICORP )<br>FINANCIAL SERVICES CORPORATION )<br>IN THE NAME OF JOSÉ RENATO )<br>GRANADO FERREIRA AND/OR )<br>BELMIRO MARTINS FERREIRA; )<br>                                      )<br>ALL ASSETS HELD IN ACCOUNT )<br>NUMBER 4581 1915 AT CITIBANK )<br>NEW YORK, IN THE NAME OF )<br>BELMIRO MARTINS FERREIRA AND/OR )<br>JOSÉ RENATO GRANADO FERREIRA; )<br>                                      )<br>ALL ASSETS HELD IN ACCOUNT )<br>NUMBER 33X-05226 AT CITICORP )<br>FINANCIAL SERVICES CORPORATION )<br>IN THE NAME OF BELMIRO MARTINS )<br>FERREIRA AND/OR JOSÉ RENATO )<br>GRANADO FERREIRA. )<br>_____) | Misc. No.: |

## EX-PARTE APPLICATION OF THE UNITED STATES FOR
## RESTRAINING ORDER PURSUANT TO 28 U.S.C. § 2467(d)(3)(B) AND
## STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

The United States of America, by and through its undersigned attorneys, respectfully

requests that this Court issue a Restraining Order pursuant to 28 U.S.C. § 2467(d)(3)(A),

(d)(3)(B)(ii) and 18 U.S.C. § 983(j) to enforce a foreign restraining order issued by the

6th Federal Criminal Court of Rio de Janeiro, Brazil, on September 20, 2007, to freeze and

restrain bank accounts at Citibank New York and Citicorp Financial Services Corporation

associated with JOSÉ RENATO GRANADO FERREIRA ("J. Ferreira") and BELMIRO

MARTINS FERREIRA ("B. Ferreira"), Brazilian nationals, who are charged in Brazil with

illegal gambling, illegal possession of gambling devices, bribery of public officials, and money

laundering violations under Brazilian law. The Government of Brazil has made a formal request

under the Mutual Legal Assistance in Criminal Matters Treaty between the United States and

Brazil (the "MLAT"), signed by the United States and Brazil on October 14, 1997, and ratified

by the United States on September 28, 1998. S. Treaty Doc. No. 105-42, asking the United

States to enforce this foreign restraining order. The instant Application seeks the restraint of the

captioned bank funds in the United States which have been identified for forfeiture by the

Brazilian authorities, and recognized as forfeitable by a Brazilian court of competent jurisdiction.

At such time as a final judgment of forfeiture is rendered by the Brazilian court, and submitted to

the United States for enforcement, the United States will seek enforcement of that order in this

Court pursuant to 28 U.S.C. § 2467(b).

## I.    JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2467, and venue is

proper with this Court pursuant to 28 U.S.C. § 2467(c)(2)(B) which provides in relevant part that

"venue [for 2467 actions] shall lie in the district court for the District of Columbia . . . ."

## II.    APPLICATION

To preserve property in the United States that may be the subject of a future foreign

forfeiture order, "the Government may apply for, and the Court may issue, a restraining order

pursuant to section 983(j) of title 18 . . . " of the United States Code. 28 U.S.C. § 2467(d)(3)(A).

To facilitate this process, the Court is empowered to "register and enforce a restraining order that

2

has been issued by a court of competent jurisdiction in the foreign country and certified by the

Attorney General pursuant to subsection (b)(2)." Pursuant to subsection (b)(2), "[t]he Attorney

General or the designee of the Attorney General shall determine whether, in the interest of

justice, to certify the request . . . ."[1] 28 U.S.C. § 2467(b)(2).

On September 20, 2007, Judge Ana Paula Vieira de Carvalho, Federal Judge of the 6th

Federal Criminal Court of Rio de Janeiro ("Brazilian Court"), issued a restraining order against

the captioned four accounts held by J. Ferreira and B. Ferreira at Citibank New York and

Citicorp Financial Services Corporation ("Brazilian Restraint Order") in the United States. A

true and correct copy of the Brazilian Restraint Order and its English translation are attached

hereto as Exhibit A. On February 11, 2008, the Assistant Attorney General for the United States

certified that it was in the interest of justice for the United States to certify the Brazilian Restraint

Order for enforcement in this Court. A true and correct copy of the Assistant Attorney General

Certification is attached hereto as Exhibit B.

Since the requirements of 28 U.S.C. § 2467(d)(3)(B)(ii) have been met, the United States

respectfully requests that this Court issue a Restraining Order against the assets identified in the

Brazilian Restraint Order and Brazilian MLAT request, and that such Order remain in place until

forfeiture proceedings in Brazil have been concluded.

III.  STATEMENT OF POINTS AND AUTHORITIES

28 U.S.C. § 2467(d)(3)(A) grants this Court authority to "register and enforce a restraining

order that has been issued by a court of competent jurisdiction in [a] foreign country and certified

---

[1] The Attorney General delegated this certification authority under Section 2467 to the Assistant Attorney General for the Criminal Division pursuant to order number 2820-2006.

by the Attorney General pursuant to subsection (b)(2)," in order to preserve its availability for

forfeiture. 28 U.S.C. § 2467(d)(3)(B)(ii). Pursuant to subsection (b)(2), it is for "[t]he Attorney

General or the designee of the Attorney General" to determine "whether, in the interest of justice,

to certify the request . . . ." 28 U.S.C. § 2467(b)(2).

As demonstrated below, the United States has met this standard, and, therefore this Court

should issue the requested restraining order against the assets of J. Ferreira and B. Ferreira

pursuant to 28 U.S.C. § 2467(d)(3)(B)(ii).

A. <u>FACTUAL BACKGROUND</u>

Brazilian authorities have made a mutual legal assistance request to the United States for

restraint of the captioned assets as a result of a Brazilian criminal investigation[2] ("Operation

Hurricane") into the acts of brothers J. Ferreira, B. Ferreira, and others, for violations of Brazilian

laws against illegal gambling (including the illegal "animal lottery"), illegal possession of

gambling devices, bribery of public officials, and money laundering operations. The Ferreira

brothers have been charged in Brazil with conducting this illegal criminal organization, which,

according to the information provided by Brazil, included large-scale, ongoing gambling

operations. The organization was also known to have successfully bribed Brazilian judges to

obtain favorable outcomes to prior gambling cases, including the return of confiscated illegal

gambling machines.[3] Brazilian investigators have confirmed that the Ferreira brothers

---

[2] The factual summary set forth below is derived solely from documentation produced by the Brazilian authorities in their mutual legal assistance request, as the United States does not have an independent investigation of its own at this time.

[3] For example, Brazilian investigators discovered that an amount of approximately R$ 1,000,000 (1,000,000 Brazilian Reals - the equivalent of over USD $450,000) was paid to a Brazilian judge, using third-party intermediaries, after which the judge granted the release of 900 seized gambling

accumulated large amounts of assets stemming from their profits in the illegal criminal enterprise, some of which were transmitted to the captioned bank accounts in the United States.

In her September 20, 2007, Restraint Order (Exhibit A), Brazilian Federal Judge Ana Paula Viera de Carvalho detailed the organization's criminal activities, including the illegal gambling activity and bribery. The judge's order also described the leadership role of J. Ferreira in the Betec Games, a legitimate bingo company under the guise and cover of which much of the illegal gaming activity took place.

On May 9 and July 3, 2007, Brazilian authorities transmitted formal legal assistance requests pursuant to the MLAT, to the U.S. Department of Justice's Office of International Affairs ("OIA") seeking evidence pertaining to the captioned bank accounts in the United States. Bank records were provided to the Brazilian authorities, and subsequently on September 20, 2007, Judge de Carvalho entered her order restraining four accounts. This Order correctly identified two of the four captioned accounts in the United States for which restraint is sought. However, the Order erroneously listed Citicorp Financial Services account number 33X-05526 as belonging to J. Ferreira. However, the bank records established that this account is actually owned by B. Ferreira and that the correct account number is 33X-05226. The Brazilians have submitted a supplemental MLAT request (attached as Exhibit C) requesting restraint of the accurately-identified account, and indicating that an amended order will be obtained from the Brazilian court to correct the typographical transposition of numbers and names. In addition, the Brazilian Restraint Order mistakenly showed Citicorp Financial Services account number 33X-05576 as

---

machines. On appeal by the government, the Ferreira brothers paid an additional bribe to another judge to secure another favorable decision.

belonging to B. Ferreira, when, in fact, it belongs to J. Ferreira.  The supplemental MLAT request

also verifies this accurate account information.

Thus, the Brazilians have requested restraint of the following accounts (hereinafter the

"Property") by enforcement of the September 20, 2007 Restraining Order of Judge de Carvalho:

> (a)  All assets held in Account No. 4246 3492 at Citibank New
> York, in the name of José Renato Granado Ferreira;
>
> (b)  All assets held in Account No. 33X-05576 at Citicorp
> Financial in the name of José Renato Granado Ferreira;
>
> (c)  All assets held in Account No. 4581 1915 at Citibank New
> York, in the name of Belmiro Martins Ferreira; and,
>
> (d)  All assets held in Account No. 33X-05226 at Citicorp
> Financial in the name of Belmiro Martins Ferreira.

The Property is the subject of a foreign restraining order authorized by the Brazilian Court

on September 20, 2007 in connection with the investigation and prosecution of J. Ferreira and

B. Ferreira, for violations of Brazilian law which give rise to forfeiture in Brazil.  The Brazilian

authorities have alleged that the Property is the proceeds of certain illegal conduct and will

become subject to the penalty of forfeiture upon conclusion of criminal proceedings in Brazil.

The conduct perpetrated by the Ferreira brothers, had it occurred in the U.S., would also constitute

violations of United States law, which would subject the Property to forfeiture under federal law

in the United States.

B.    ARGUMENT

1.    This Court has Authority to Enforce Foreign Restraining Orders that Have Been
Certified for Enforcement by the Assistant Attorney General

To ensure that U.S.- based property which may be subject to forfeiture in a foreign

forfeiture proceeding is not dissipated or moved, § 2467 allows this Court to issue a restraining

6

order against assets located in the United States pending the conclusion of a foreign forfeiture proceeding.  For this Court to issue such a restraining order, four elements must be met: (1) the United States and the foreign nation in which the order was issued must be parties to a formal international agreement providing for mutual forfeiture assistance; (2) the restraining order must have been issued by a court of competent jurisdiction in the foreign nation; (3) the property ordered restrained by the foreign court must be alleged to be the proceeds of, or property involved in, a violation or offense that would give rise to forfeiture if committed in the United States; and (4) the Attorney General must have certified, in the interest of justice, the foreign order for enforcement in the United States.  28 U.S.C. § 2467(a)(1)-(2), and 2467(d)(3).  The Attorney General's determination is nonreviewable.  § 2467(b)(2).

    2.    <u>The Requirements For Recognizing a Foreign Restraining Order Have Been Met</u>

All four statutorily-required elements for recognition and enforcement of the Brazilian Restraint Order have been met.  First, the Government of Brazil has submitted its request pursuant to the Mutual Legal Assistance in Criminal Matters Treaty between the United States and Brazil (the "MLAT"), which was signed by the United States and Brazil on October 14, 1997, and ratified by the United States on September 28, 1998.  S. Treaty Doc. No. 105-42.  Under Article 16 of the MLAT, the United States has an obligation to assist in the preservation of assets subject to forfeiture.  Because Brazil is a U.S. treaty partner, the first criterion for enforcement is met.

Second, the Brazilian Court is authorized to order the restraint of property that will be subject to forfeiture in the criminal case pending in Brazil.  The Brazilian Restraint Order was issued by a court of competent jurisdiction in Brazil.  Accordingly, the second criterion for enforcement is met.

Third, the Property sought to be restrained represents the proceeds of, or property involved in, a violation or offense that would give rise to forfeiture if committed in the United States.  The MLAT requests and the foreign restraining order explain that the conduct under investigation by Brazil into the activities of the Ferreira brothers and others constitutes, *inter alia*, the operation of illegal gambling businesses in Brazil, illegal possession of gambling devices, bribery of public officials, and money laundering offenses under Brazilian law.  Brazilian authorities have confirmed that such offenses will give rise to forfeiture, upon conviction, in Brazil.  Thus, the MLAT requests and Brazilian Restraint Order describe conduct that, had it occurred in the United States, would constitute violations of 18 U.S.C. §§ 1955 (operating illegal gambling businesses), 201 (bribery of public officials), and 1956 (money laundering), as well as 15 U.S.C. § 1175 (unlawful possession of gambling devices).  Proceeds of, and property involved in, these United States offenses are subject to forfeiture in the United States pursuant to 18 U.S.C. § 1955(d) [property used in violation of the illegal gambling business statute] and 18 U.S.C. § 981(a)(1)(C) [laundering of the proceeds of "specified unlawful activities" which include "racketeering activities" (18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)) such as bribery and gambling offenses under state and local laws.  Accordingly, the third criterion is met since the conduct committed by the Ferreira brothers would give rise to forfeiture in both countries.

Fourth, the Brazilian Restraint Order was certified by the United States Assistant Attorney General on February 11, 2008.  The Assistant Attorney General determined that enforcement of the attached Restraining Orders is in the interest of justice.

Thus, ample justification exists for enforcement of the attached Restraining Orders in the United States.

IV.  <u>CONCLUSION</u>

Therefore, the United States respectfully requests that this Court enforce the September

20, 2007 Brazilian Restraint Order, consistent with United States' treaty obligations under the

MLAT between the Governments of the United States and Brazil, by entering the attached

restraining order against the captioned assets pursuant to this Court's authority under 28 U.S.C.

§ 2467(d)(3)(B)(ii).  The United States further asks that it be permitted to serve the Order by

facsimile transmission to the affected financial institutions.  The United States will promptly

request, through the appropriate legal assistance channels, that those individuals and entities with

an apparent interest in the captioned funds be provided with notice of, and a copy of, this Court's

Order.

Dated this _____ day of February, 2008.

<div style="margin-left: 40%">

Respectfully submitted,

RICHARD WEBER, CHIEF
ASSET FORFEITURE AND MONEY
LAUNDERING SECTION (AFMLS)
LINDA M. SAMUEL
Deputy Chief
By:


_____
JEAN B. WELD (VA Bar #19295)
Trial Attorney, AFMLS
Criminal Division
United States Department of Justice
1400 New York Avenue, N.W., 10th Floor
Washington, D.C. 20530
Telephone:  (202) 514-1263
jean.weld@usdoj.gov
Attorneys for Applicant
UNITED STATES OF AMERICA

</div>



PODER JUDICIÁRIO
JUSTIÇA FEDERAL
SEÇÃO JUDICIÁRIA DO RIO DE JANEIRO

06ª Vara Federal Criminal do Rio de Janeiro
Processo nº 2007.51.01.806266-4

CONCLUSÃO

Nesta data, faço estes autos conclusos a(o) MM.
Sr(a). Dr(a). Juiz(a) da(o) 06ª Vara Federal
Criminal do Rio de Janeiro.

Rio de Janeiro, 18 de setembro de 2007.

JOAO DE ALMEIDA RODRIGUES NETO
Diretor(a) de secretaria

Processo No. 2007.51.01.806266-4

## Vistos etc.

Trata-se de requerimento formulado pelo Ministério Público
Federal, às fls. 02/05, visando obter, via acordo internacional, O
**AFASTAMENTO DO SIGILO BANCÁRIO de JOSÉ RENATO GRANADO
FERREIRA e BELMIRO MARTINS FERREIRA, bem como o BLOQUEIO
DOS RECURSOS EVENTUALMENTE DEPOSITADOS NAS CONTAS DOS
MESMOS.**

A OPERAÇÃO FURACÃO trouxe fortes indícios de que os
denunciados operacionalizam sofisticada organização criminosa, com
movimentação de elevadíssimas somas de dinheiro e infiltração nas mais
altas esferas do aparelho estatal.

Segundo indiciam as apurações, AILTON GUIMARÃES
JORGE, o "Capitão Guimarães", ANIZ ABRAHÃO DAVID, o ANISIO, e
ANTONIO PETRUS KALIL, o "turcão", seriam os líderes da organização
criminosa desbaratada, especializada na exploração de jogos de azar e
verdadeiros donos de casas de bingo no Estado do Rio de Janeiro,
compondo o "núcleo duro" da quadrilha e determinando todos os destinos do



PODER JUDICIÁRIO
JUSTIÇA FEDERAL
SEÇÃO JUDICIÁRIA DO RIO DE JANEIRO



grupo. Muito embora não transmitam suas decisões diretamente aos operadores do grupo, fazem-no, segundo a versão acusatória, através dos denunciados que compõem a ABERJ- Associação de Bingos e Similares do Estado do Rio de Janeiro, mais especificamente JOSÉ RENATO GRANADO FERREIRA, PAULO ROBERTO FERREIRA LINO e JÚLIO GUIMARÃES SOBREIRA. PAULO ROBERTO e JOSÉ RENATO são, respectivamente, Presidente e Vice-Presidente da ABERJ, sendo JULIO GUIMARÃES o Secretário-Geral da entidade e sobrinho do primeiro denunciado, "Capitão GUIMARÃES". JOSÉ RENATO é, ainda, sócio da BETEC GAMES, empresa especializada na importação dos componentes eletrônicos utilizados nas máquinas de jogos de azar, juntamente com seu irmão BELMIRO MARTINS FERREIRA.

Foi justamente através da BETEC GAMES que a quadrilha impetrou mandado de segurança junto ao TRF da 2ª. Região, com o objetivo de ver devolvidas 900 máquinas apreendidas e de propriedade dos irmãos JOSÉ RENATO e BELMIRO MARTINS FERREIRA. Este *mandamus* teria, conforme teor do relatório da autoridade policial, engendrado o pagamento de propina, pela quadrilha, no montante de R$ 1.000.000,00 (um milhão de reais) ao Desembargador Federal JOSÉ EDUARDO CARREIRA ALVIM, mediante a intermediação de seu genro, o também denunciado e advogado SILVERIO NERY JR. Na seqüência, ainda segundo as investigações da polícia federal, um recurso do Ministério Público Federal interposto contra a decisão de ALVIM teria levado o feito a exame pelo Superior Tribunal de Justiça, onde foi distribuído ao Ministro PAULO MEDINA. Lá, através da intermediação do irmão do Ministro, o ora denunciado VIRGÍLIO MEDINA, a quadrilha teria obtido mais uma decisão favorável, desta vez mediante paga de R$ 600.000,00 (seiscentos mil reais).



**PODER JUDICIÁRIO**
**JUSTIÇA FEDERAL**
SEÇÃO JUDICIÁRIA DO RIO DE JANEIRO



O que a autoridade policial chama de "segundo nível" da organização criminosa seria, na verdade, o braço da organização que, em tese, seria responsável pela atuação junto aos meios de repressão dos jogos de azar, mais especificamente Judiciário e Polícias Federal e Civil. Assim é que cabia aos denunciados – advogados e lobistas - JAIME GARCIA DIAS, EVANDRO DA FONSECA, SILVERIO NERY CABRAL JR. (genro do Desembargador CARREIRA ALVIM) e SÉRGIO LUZIO MARQUES ARAÚJO operacionalizar os pedidos em juízo referentes a devoluções de máquinas apreendidas, bem como a manutenção em funcionamento de casas de bingo, sempre, segundo a acusação, através de pagamento de propinas a juízes e delegados. Com esta mesma finalidade o grupo logrou contactar o denunciado VIRGÍLIO MEDINA, que teria servido aos interesses da organização através da intermediação, mediante propina, da venda de decisões judiciais a serem prolatas por seu irmão, Ministro PAULO MEDINA, perante o Superior Tribunal de Justiça.

Neste nível estariam também, ainda segundo as apurações, agentes públicos cooptados pela quadrilha, que tinham como função fornecer, mediante paga, informações privilegiadas sobre operações de repressão aos jogos, a serem levadas a cabo ora pela justiça, ora pela polícia. Desempenhariam esta função os Delegados Federais CARLOS PEREIRA, SUSIE PINHEIRO DIAS DE MATTOS, LUIZ PAULO DIAS DE MATTOS (DPF aposentado), e FRANCISCO MARTINS DA SILVA, agente federal lotado na Delegacia de Niterói.

Já o denunciado MARCOS ANTONIO DA SILVA BRETAS, policial civil, participava em tese da organização com a incumbência não apenas de fornecer informações privilegiadas que em razão da função



PODER JUDICIÁRIO
JUSTIÇA FEDERAL
SEÇÃO JUDICIÁRIA DO RIO DE JANEIRO



recebesse, assessorando diretamente o co-denunciado JÚLIO GUIMARÃES, como uma espécie de braço-direito, mas sobretudo também com a importantíssima atribuição de pagamento mensal das propinas a serem distribuídas a policiais e servidores públicos cooptados pelo grupo. Com efeito, num dos locais que a investigação demonstrou ser utilizado para pagamento — um imóvel localizado na Tijuca e apelidado de "preta" - foram apreendidos cerca de cinco milhões de reais em dinheiro pela polícia federal (endereço este que constava de anotação encontrada em busca e apreensão realizada no gabinete do Desembargador RICARDO REGUEIRA). Estes valores, destinados a propina, seriam arrecadados pela ABERJ dos bingos associados ou mediante cotização dos empresários beneficiados por ações específicas.

Através desta estrutura, as investigações trouxeram a lume sérios indícios de que a quadrilha pagaria milhões de reais por decisões judiciais (em tese prolatadas pelo Desembargador Federal CARREIRA ALVIM e pelo Ministro PAULO MEDINA, do Superior Tribunal de Justiça), assim como "mesadas" a policiais, delegados, e até mesmo a um juiz do Tribunal Regional do Trabalho de Campinas, ERNESTO DÓRIA, e a um Procurador Regional da República, JOÃO SÉRGIO LEAL.

A investigação traz ainda elementos no sentido de que a quadrilha não só contribuía para campanhas de parlamentares, como com eles mantinha contatos para tratar de assuntos relacionados à legalização dos jogos de azar, o que demonstra o grau de infiltração nos mais variados poderes da República.



PODER JUDICIÁRIO
JUSTIÇA FEDERAL
SEÇÃO JUDICIÁRIA DO RIO DE JANEIRO



JOSÉ RENATO é o atual vice-presidente da Associação de Bingos do Estado do Rio de Janeiro, a ABERJ. Caberia a ele, portanto juntamente com o Presidente, PAULO LINO, a administração da associação que, segundo apontam as investigações, concentraria o papel de recolhimento de dinheiro das casas de bingo e operadoras de máquinas para posterior repasse aos operadores do esquema de propinas. Ainda segundo as investigações, este dinheiro seria guardado no imóvel apelidado de "preta", situado na Av. Conde de Bonfim, na Tijuca, e no qual efetivamente foram encontrados cerca de cinco milhões de reais atrás de uma parede falsa.

Juntamente com seu irmão BELMIRO, JOSÉ RENATO é ainda dono da BETEC GAMES, empresa que teria tido máquinas suas apreendidas em operação da polícia federal em Niterói, e que posteriormente teria obtido a liberação através de liminar concedida pelo Desembargador Federal Carreira Alvim, ora sob suspeita.

As investigações demonstraram intensa interação entre JOSÉ RENATO e vários dos demais denunciados.

Diálogos travados entre JAIME e JOSÉ RENATO indiciam que acompanhava de perto as estratégias assumidas pelo lobista da ABERJ nas ações judiciais envolvendo interesses da BETEC e de casas de bingo. Embora menos freqüente, esta interação com JAIME também vem indiciada em relação a BELMIRO, conforme informação policial de fls. 869, que aponta para um encontro, acompanhado pelos policiais, no restaurante Fratelli, do qual teriam participado JOSÉ RENATO, JAIME, SILVERIO JUNIOR BELMIRO e EVANDRO, na data de 25 de setembro de 2006.



PODER JUDICIÁRIO
JUSTIÇA FEDERAL
SEÇÃO JUDICIÁRIA DO RIO DE JANEIRO



As investigações apontam ainda que o possível contato entre JOSÉ RENATO - e portanto a ABERJ e a BETEC GAMES - e o Des CARREIRA ALVIM não se restringia a encontros com o genro do Desembargador, SILVERIO NERY JR, como mencionado acima. Com efeito, a informação policial de fls. 1827 narra um suposto encontro, inclusive fotografado pelos agentes policiais, entre JOSÉ RENATO e o próprio Desembargador Federal no Fratelli, no dia 18 de janeiro de 2007, no qual estariam presentes, ainda, JAIME e SILVERIO JR.

Há ainda indícios de que JOSÉ RENATO interagisse freqüentemente com o que as investigações apontam ser o "braço policial" da quadrilha. Com efeito, diálogos interceptados indiciam um contato entre JOSÉ RENATO e policiais da DRACO, intermediado por MARCOS BRETAS, o MARCÃO, cujo objetivo seria, em tese, interferir em investigações lá em curso, supostamente dos interesses da quadrilha. O contato entre JOSÉ RENATO e o Delegado Federal aposentado LUIZ PAULO vem indiciado através da informação policial de fls.340 do apenso 3, segundo a qual teria havido um encontro entre ambos e o policial civil CLAUDIO AUGUSTO DOS REIS ALMEIDA no restaurante Fratelli, no dia 19 de outubro de 2006, policial este que em situação posterior foi visto encontrando-se com o policial MARCOS BRETAS, conforme informação policial de fls. 504.

Já às fls. 1155 do vol. 4 e às fls. 1690 do vol. 07 constam diálogos travados entre JOSÉ RENATO e MARCOS BRETAS, e entre JOSÉ RENATO e SÉRGIO LUZIO, que indiciam que o acusado pudesse ser destinatário de informações privilegiadas sobre operações policiais que visassem a reprimir a atuação de casas de bingos e máquinas.





PODER JUDICIÁRIO
JUSTIÇA FEDERAL
SEÇÃO JUDICIÁRIA DO RIO DE JANEIRO



Aliás, as diligências de busca e apreensão realizadas nos imóveis vinculados à organização criminosa indiciam possível envolvimento dos requeridos na máfia do jogo do bicho no Rio de Janeiro, os quais participariam inclusive na distribuição de propinas a agentes policiais. Com efeito, em uma dessas diligências, foram apreendidos mais de 5,2 milhões de reais ocultados atrás de uma parede falsa.

Há a possibilidade, portanto dos acusados BELMIRO e JOSÉ RENATO terem amealhado vultuoso patrimônio em razão dos lucros exorbitantes proporcionados pela exploração ilegal de jogos de azar, atividade a que supostamente se dedicariam os requeridos, segundo apontam as apurações.

Deste modo, a medida de cooperação para obtenção de informações bancárias faz-se efetivamente necessária para o aprofundamento das investigações, ante a possibilidade de que tais contas tenham sido constituídas com o especial fim de ocultar o produto das atividades em tese delituosas. Deveras, a tese de locupletamento indevido é robustecida à luz dos indícios de que os acusados movimentariam grande quantidade de dinheiro em espécie, e não por intermédio de instituições bancárias. É razoável, portanto, suspeitar-se de remessa ao exterior de valores resultantes da exploração ilegal de jogos de azar a que em tese se dedicavam os réus.

Isto posto, defiro a promoção ministerial de fls. 02/05 para **AFASTAR O SIGILO DAS OPERAÇÕES BANCÁRIAS E FINANCEIRAS** das contas abaixo discriminadas, no período compreendido entre 01 de junho de 2002 e a presente data:



**PODER JUDICIÁRIO**
**JUSTIÇA FEDERAL**
SEÇÃO JUDICIÁRIA DO RIO DE JANEIRO



- conta nº 42463492, Citibank Nova Iorque, titularizada por JOSÉ RENATO GRANADO FERREIRA;

- conta nº 33x-05526, Citibank Financial Corporations, emnome de JOSÉ RENATO GRANADO FERREIRA;

- conta nº 45811915, Citibank Nova Iorque, cujo titular é BELMIRO MARTINS FERREIRA;

- conta nº 33x-05576 - Citicorp Financial Corporations, em nome de BELMIRO MARTINS FERREIRA.

Determino, ainda, o bloqueio dos valores porventura depositados nas contas bancárias acima mencionadas.

Expeça-se ofício à Autoridade Central Brasileira mencionada no Acordo de Cooperação Judiciária Internacional em Matéria Penal firmado entre Brasil e Estados Unidos da América (Decreto nº 3810/2001) para a implementação das medidas ora deferidas.

Rio de Janeiro, 20 de setembro de 2007.

ANA PAULA VIEIRA DE CARVALHO
Juiz(a) Federal Titular

**D A T A**

Nesta data, recebi estes autos do(a) MM. Sr(a). Juiz(a)da 6ª Vara Federal Criminal.

Rio de Janeiro, ℓ~ de ᵓᵧ de 2007.

Servidor

**JUDICIARY POWER**

**FEDERAL JUSTICE**

JUDICIARY DISTRICT OF RIO DE JANEIRO

6th Federal Criminal Court of Rio de Janeiro
Process nº 2007.5150.806266-4

CONCLUSION

On this date, I give this case to the Honorable Judge of 6th Federal Criminal Court of Rio de Janeiro.

Rio de Janeiro, September 18th, 2007.

João de Almeida Rodrigues Neto
Director of Secretariat
Process n° 2007.51.01.806266-4

**Received, etc.**

This matter is about a request put forward by the Federal Public Prosecution Service aiming at obtaining, through international agreement, the **SUSPENSION OF BANT DATA CONFIDENTIALITY of JOSÉ RENATO GRANADO FERREIRA e BELMIRO MARTINS FEREIRA, as well as THE BLOCKADE OF ASSETS THAT MIGHT POSSIBLY BE DEPOSITED IN THEIR ACCOUNTS.**

The HURRICANE OPERATION brought strong hints that the denounced operated a sophisticated criminal organization, with transactions amounting to very large sums of money and infiltration in the highest levels of the state organization.

As hinted in the findings, **AILTON GUIMARÃES JORGE**, known as "Capitão Guimarães", **ANIZ ABRAHÃO DAVID**, known as ANÍSIO, and **ANTONIO PETRUS KALIL**, known as "Turcão", would be the leaders of the criminal organization, specialized in the exploitation of games of chance and the real owners of the bingo houses in the State of Rio de Janeiro, constituting the "hard core" of the gang and deciding the courses of action of the group. Even though they do not transmit their decisions directly to the group operators, they do that, according to the accusatory account, through the denounced who compose the ABERJ (Bingoes and Similar Activities in the State of Rio de Janeiro Association), more specifically JOSE RENATO GRANADO FERREIRA, PAULO ROBERTO FERREIRA LINO and JULIO GUIMARÃES SOBREIRA. PAULO ROBERTO and JOSE RENATO are, respectively, President and Vice President of the ABERJ, and JULIO GUIMARÃES is the secretary of the entity and nephew of the first accused, "Capitão Guimarães". JOSE RENATO is, also, partner of the BETEC GAMES, an enterprise specialized in the import of the

Sergio Manera Falcão
Tradutor
RG CREA 18936-D

FROM:                        TO: 00151202514552Z                  00/01/01 00:00   PAGE: 11

**JUDICIARY POWER**

**FEDERAL JUSTICE**

JUDICIARY DISTRICT OF RIO DE JANEIRO

electronic components used in the games of chance machines, along with his brother BELMIRO MARTINS FERREIRA.

It was precisely through the BETEC GAMES that the gang filed a writ of mandamus within the Federal Court of Appeals of the 2nd Region, in order to retrieve 900 machines that have been seized and were owned by the brothers JOSE RENATO and BELMIRO MARTINS. This writ would have, according to the police authority report, caused the payment of a bribe, by the gang, amounting to R$ 1,000,000.00 (one million reais) to the Federal Court of Appeals Judge JOSE EDUARDO CARREIRA ALVIM, by means of the intermediation of his son-in-law, the also denounced and lawyer SILVÉRIO NERY JR. Afterwards, still according to the investigations carried out by Federal Police, an appeal filed by the Federal Public Prosecution Service against the decision of Judge ALVIM had taken the matter to the attention of the Superior Tribunal of Justice, where it was distributed to Minister PAULO MEDINA. There, with the intermediation of the Minister's brother, the now denounced VIRGILIO MEDINA, the gang managed to obtain a favorable decision, this time by means of the payment of R$ 600,000.00 (six hundred thousand reais).

What the police authority calls "second level" of the criminal organization would be, actually, the organization's arm that would be responsible for acting within the means of repression of the games of chance, more specifically the Judiciary Power and the Civil and Federal Police. So, it was up to the denounced – lawyers and lobbyists – JAIME GARCIA DIAS, EVANDRO DA FONSECA SILVÉRIO NERY CABRAL JR (son in law of the Court of Appeals Judge CARREIRA ALVIM), and SERGIO LUZIO MARQUES ARAUJO to take steps in order to put forward the requests at the courts for the returning of seized machines, as well as for maintaining the Bingo's Houses operational, always, according to the charge, by means of the payment of bribes to judges and police marshals. With the same purpose, the group managed to get in touch with the denounced VIRGILIO MEDINA, who would have been serving the interests of the organization through intermediation, by means, of bribery, of the sale of judicial decisions to be made by his brother, Minister PAULO MEDINA, before the SUPERIOR TRIBUNAL OF JUSTICE.

Also in this level, there would be also, still according to the findings, public agents co-opted by the gang, who were in charge of supplying, in exchange for a payment, inside information about repressive operations concerning the games, to be carried out by the judiciary or by the police. This

Sergio Manera Falcão
Tradutor
RG CREA 18936-D

**JUDICIARY POWER**

**FEDERAL JUSTICE**

JUDICIARY DISTRICT OF RIO DE JANEIRO

job would be performed by Federal Police Marshals CARLOS PEREIRA, SUSIE PINHEIRO DIAS DE MATTOS, LUIZ PAULO DIAS DE MATTOS (retired federal marshal), and FRANCISCO MARTINS DA SILVA, federal police officer working in the District of Niterói.

The denounced MARCOS ANTONIO DA SILVA BRETAS, civil police officer, took part in the organization with the task not only of supplying inside information he received on account of his office, directly advising the co-denounced JULIO GUIMARÃES, as a sort of right-hand man, but above all having the most important attribution of making the monthly payment of bribes to be distributed to police officers and public officials co-opted by the group. In fact, in one of the places that the investigation demonstrated to be used for payments – a real property situated in the Tijuca neighborhood and called "Preta" by the gang – about 5 million reais in cash were seized by Federal Police (the address was in a note found in the office of the Court of Appeals Judge RICARDO REGUEIRA, during a search and seizure warrant). These values, destined to bribery, were collected by ABERJ from the associated bingoes or by means of quotas raised from the businessmen that benefited from specific actions.

Through this structure, the investigation brought to light serious hints that the gang paid millions of reais for judicial decisions (generally speaking decisions made by the Federal Court of Appeals Judges RICARDO REGUEIRA, CARREIRA ALVIM, and MINISTER PAULO MEDINA, of the SUPERIOR TRIBUNAL OF JUSTICE), as well as also paid "monthly allowances" to policemen, marshals, and even to a judge of the Regional Labor Tribunal in the city of Campinas, ERNESTO DÓRIA, and to a Regional Republic Prosecutor, JOÃO SERGIO LEAL.

The investigations still brings elements in the sense that the gang, not only contributed to Members of Parliament political campaigns, as well as maintained contacts with them to discuss subjects related to the legalization of the games of chance, what demonstrates the degree of infiltration in various powers of the Republic.

Sergio Manera Falcão
Tradutor
RG CREA 18936-D

## JUDICIARY POWER
### FEDERAL JUSTICE
JUDICIARY DISTRICT OF RIO DE JANEIRO

JOSE RENATO is presently the vice-president of the ABERJ, Rio de Janeiro State Bingoes Association. Thus, it would be up to him, along with the President, PAULO LINO, the administration of the association that, according to the investigations, would concentrate the role of collecting money, from bingo's houses and machine operators, to be eventually handed over to the operators of the bribery scheme. Still according to the investigations, this money would be kept in a real property known as "Preta", located on Rua Conde de Bonfim, in the Tijuca's neighborhood, where, effectively, about five million reais hidden behind a false wall were found.

Along with his brother BELMIRO, JOSÉ RENATO is still the owner of BETEC GAMES, enterprise that would have had their machines apprehended in a federal police operation in Niterói, and that afterwards he would have obtained their liberation through the preliminary order granted by the Federal Court of Appeals Judge Carreira Alvim, now under suspicion.

The investigations demonstrated intense interaction between JOSE RENATO and several other denounced.

Dialogs between JAIME and JOSE RENATO hint that he closely followed the strategies adopted by the ABERJ lobbyist in the juridical actions involving the BETEC's and bingo's houses' interests. Although less frequently this interaction with JAIME is also hinted as it comes to BELMIRO, according to the police information at page 869, that points to a meeting watched by the policemen, at the Fratelli Restaurant in which JOSÉ RENATO JAIME, SILVÉRIO JÚNIOR, BELMIRO and EVANDRO would have taken part, on the 25th of September, 2006.

The investigations still point that the possible contact between JOSE RENATO – and therefore the ABERJ and the BETEC GAMES – and the Judge of the Court of Appeals CARREIRA ALVIM was not restricted to meetings with the Judge's son-in-law, SILVÉRIO NERY JR, as mentioned above. In fact, the police information at page 1827 reports a supposed meeting,

Sergio Manera Falcão
Tradutor
RG CREA 18936-D

## JUDICIARY POWER

## FEDERAL JUSTICE

### JUDICIARY DISTRICT OF RIO DE JANEIRO

that was even photographed by the police agents, between JOSE RENATO and the Federal Court of Appeals Judge at Fratelli, on 01/18/2007, in which JAIME and SILVÉRIO JR would also be also present,

There are still hints that JOSE RENATO frequently interacted with what the investigation indicate to be the "police arm" of the gang. In fact intercepted dialogs suggests a contact between JOSE RENATO and policemen from DRACO, intermediated by MARCOS BRETAS, also known as MARCÃO, with the purpose of, generally speaking, interfering with the investigations in progress there, supposedly to the interests of the gang. The contact between JOSE RENATO and the retired Federal Marshal LUIZ PAULO is hinted by the police information at page 340 on the annex 3, according to which there would have been a meeting between them and the civil police officer CLÁUDIO AUGUSTO DOS REIS ALMEIDA at the Fratelli Restaurant, on 10/19/2006, being that, afterwards, the same police officer was seen meeting police officer MARCOS BRETAS, according to police information at page 504.

At pages 1155 of volume 4 and 1690 of volume 7 there are dialogs between JOSE RENATO and SERGIO LUZIO, hinting that the accused might be the addressee of inside information about police operations aiming to repress the operation of bingo's houses and machines.

By the way, the search and seizure proceedings carried out in real properties linked to the criminal organization hint a possible involvement of the accused in the gang that operates the illegal game of chance known as "animal lottery"; they would even participate in the distribution of bribes to police officers. Actually, in one of those searches, 5,2 million reais hidden behind a false wall were seized.

So the accused BELMIRO e JOSÉ RENATO have possibly gathered large amounts of assets due to the enormous profits arising from the illegal exploitation of games of chance, activity to which the accused were supposedly dedicated, as the investigations indicate.

Sergio Manera Falcão
Tradutor
RG CREA 18936-D

# JUDICIARY POWER
## FEDERAL JUSTICE
### JUDICIARY DISTRICT OF RIO DE JANEIRO

Thus, the cooperation measure in order to obtain banking information is really necessary so as to deepen the investigations, given the possibility that such accounts have been established with the special purpose of hiding the product of supposedly criminal activities. In truth, the argument of illegal enrichment is strengthened by the hints that the accused would have made transactions involving large amounts of money in cash, and not through banking institutions. Therefore, it is reasonable to suspect the remittance abroad of proceeds originated from illegal exploitation of games of chance, occupation to which the defendants were supposedly dedicated.

Having said that, I grant the Federal Public Prosecution Service's motion at pages 02/05 **TO SUSPEND THE SECRECY OF THE BANKING AND FINANTIAL OPERATIONS** regarding the accounts listed below, in the period between June 1st, 2002 and the present date.

- Account number 4246 3492, Citibank New York, held by JOSÉ RENATO GRANADO FERREIRA;

- Account number 33X-05526, Citibank Financial Corporations in the name of JOSÉ RENATO GRANADO FERREIRA;

- Account number 4581 1915 Citibank New York, whose holder is BELMIRO MARTINS FERREIRA;

- Account number 33X-05576 – Citicorp Financial Corporation in the name of BELMIRO MARTINS FERREIRA;

I order, furthermore, the blockade of the assets that might perchance be deposited in the aforementioned accounts.

Sergio Manera Falcão
Tradutor
RG CREA 18936-D

# JUDICIARY POWER

# FEDERAL JUSTICE

## JUDICIARY DISTRICT OF RIO DE JANEIRO

Be an official letter sent to the Brazilian Central Authority referred to in the International Judicial Cooperation Agreement in Criminal Matters signed by Brazil and the United States of America (Decree number 3810/2001), regarding the execution of the measures now granted.

Rio de Janeiro, September 20th, 2007.

ANA PAULA VIEIRA DE CARVALHO
Federal judge

DATE

On this date I received these records from the Honorable Judge of the 6th Federal Criminal Court.

Rio de Janeiro, September    , 2007.

Clerk of the Court

Sergio Manera Falcão
Tradutor
RG CREA 18936-D



**U.S. Department of Justice**

Criminal Division

_Assistant Attorney General_                                    _Washington, D.C. 20530_

## ASSISTANT ATTORNEY GENERAL DECISION

Re:   Certification of Foreign Restraining Orders from the  the
      Government of the Federative Republic of Brazil Pursuant to
      28 U.S.C. § 2467(b)(2) and (3) in the José Renato Granado Ferreira
      and Belmiro Martins Ferreira.

**DECISION:**

The September 20, 2007 request by Brazil for domestic enforcement of the
restraining order, issued by the 6th Federal Criminal Court of Rio de Janeiro,
Brazil, against the Assets of JOSÉ RENATO GRANADO FERREIRA and
BELMIRO MARTINS FERREIRA is hereby CERTIFIED to be in the interest of
justice.

_02/11/08_
**Date**

**Alice S. Fisher**
**Assistant Attorney General**
**Criminal Division**



MINISTÉRIO DA JUSTIÇA
SECRETARIA NACIONAL DE JUSTIÇA
DEPARTAMENTO DE RECUPERAÇÃO DE ATIVOS E COOPERAÇÃO JURÍDICA INTERNACIONAL
COORDENAÇÃO-GERAL DE RECUPERAÇÃO DE ATIVOS

Official Letter No. **760** /2008/DRCI-SNJ-MJ

Brasília, February 13th, 2008.

MS. JEAN B. WELD
Senior Trial Attorney
Asset Forfeiture and Money Laundering Section
United States Department of Justice, Criminal Division
1400 New York Ave. NW
20530 – Washington – DC

Subject: **Supplemental request for Mutual Legal Assistance in Criminal Matters in the matter of Operation Hurricane.**

Dear Madam,

1.          We write to you regarding the above referenced case, to supplement the request for mutual legal assistance pertaining to Operation Hurricane, which was transmitted to the Office of International Affairs of the U.S. Department of Justice via the Official Letters No. 2944/2007/DRCI-SNJ-MJ, dated May 9th, 2007, No. 9917/2007/DRCI-SNJ-MJ, dated December 28th, 2007, and No. 416/2008/DRCI-SNJ-MJ, dated January 28th, 2008. Said request sought the seizure of the bank accounts mentioned therein, among others requests.

2.          The aforementioned request for assistance transmitted a seizure order filed by the Brazilian Court. However, it has come to our attention that there were typographical errors in the said order. Therefore, we kindly ask, pursuant to the MLAT, that the United States execute said Brazilian court seizure order entered on September 20, 2007, as applied to the following accurate information on the financial accounts:

  i.    Account Number 33x-05576 at Citicorp Financial Services Corp in the name of José Renato Granado Ferreira;
  ii.   Account Number 33x-05226 at Citicorp Financial Services Corp in the name of Belmiro Martins Ferreira Jr.

3.          In this respect, we additionally inform you that an amended order from the Brazilian Court shall be provided promptly to the U.S. Authorities. We apologize for the inconvenience.

ra/pgp



4.    Please feel free to contact us should any questions arise.

Best regards,

Ana Maria Belotto
General Coordinator